[Crim. No. 12446. Third Dist. Sept. 29, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID L. BRODER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*See footnote 4, *post,* page 578.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, David Y. Stanley and Michael R. Snedeker, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Ramon M. de la Guardia, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—A jury convicted defendant of second degree burglary (Pen. Code, § 459) and, in a bifurcated proceeding (see *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644, 650 [174 Cal.Rptr. 191]), found true a special allegation that defendant served a prior prison term for burglary (Pen. Code, § 667.5, subd. (b)). Defendant appeals from the judgment sentencing him to state prison, contending the court erred in denying his motion to prohibit use of his prior conviction for impeachment should he testify and his motion to exclude an extrajudicial identification and in-court testimony based thereon. We conclude the court properly denied defendant's motion to exclude identification testimony. However, we conclude the court erred in denying defendant's motion to prohibit use of his prior conviction for impeachment and that the error requires reversal.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts may be briefly stated. On March 4, 1982, Ray and Juanita McCall lived at 8182 Sunrise Boulevard in Sacramento County. In the early afternoon, their neighbor, a young man, came to their house to use the telephone, and the McCalls told him they were soon going shopping. At approximately 2 p.m. the McCalls left to go shopping. While the McCalls were out, the neighbor noticed a gold Honda car parked in their driveway.

The neighbor saw two individuals carrying a television and stereo equipment from the McCall house to the gold Honda. He got a good look at the man who drove the Honda away. The neighbor also noted the license number of the car and gave it to the police along with a description of the men. A week later the neighbor identified defendant in a photographic lineup as one of the men seen at the McCall house.

Through the license number provided by the neighbor, the police traced the Honda to Christine Dunn. Dunn lent her car to defendant the afternoon of the robbery.

Victim Juanita McCall is the sister of Dunn's boyfriend; defendant's sister was Dunn's roommate.

Prior to trial and pursuant to *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], defendant moved the court for an order pro-

hibiting the People from using his 1979 conviction for burglary (Pen. Code, § 459) for impeachment in the event that he testified. Relying on the impeachment-without-limitation section of Proposition 8 (Cal. Const., art. I, § 28, subd. (f)), the trial court denied defendant's motion and ruled the prior could be used to impeach defendant if he testified. Defendant did not testify at trial.

DISCUSSION

I

A

■ Defendant contends that the trial court erred in denying his motion to prohibit his impeachment by a prior burglary conviction. (*People* v. *Beagle, supra,* 6 Cal.3d at pp. 451-453.) In ruling on the motion, the court did not engage in the requisite balancing process involving the probative value of the prior (*id.*; see Evid. Code, § 352), reasoning that the recently enacted impeachment-without-limitation section of Proposition 8 (Cal. Const., art. I, § 28, subd. (f))[1] required that the prior be admitted for impeachment purposes.

In *People* v. *Smith* (1983) 34 Cal.3d 251, at page 258 [193 Cal.Rptr. 692, 667 P.2d 149], our Supreme Court recently held "that Proposition 8 applies only to prosecutions for crimes committed on or after its effective date." Defendant committed his crime on March 4, 1982. The effective date of Proposition 8 was June 9, 1982. (*Id.,* at p. 257.) Proposition 8 was therefore inapplicable to defendant's case. Accordingly, we conduct our review under the law as it stood at the time of the crime. (*Id.,* at p. 263.)

Had the court exercised its discretion under *Beagle* it would have been compelled to exclude the prior conviction because it was for the same offense with which defendant was charged. (*People* v. *Spearman* (1979) 25 Cal.3d 107, 116 [157 Cal.Rptr. 883, 599 P.2d 74]; *People* v. *Lassell* (1980) 108 Cal.App.3d 720, 727 [166 Cal.Rptr. 678].) The trial court therefore erred in denying defendant's *Beagle* motion.

B

■ We next examine whether the erroneous denial of defendant's *Beagle* motion constituted prejudicial error requiring reversal. The record in this

---

[1]Subdivision (f) provides in relevant part: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding."

case contains no explicit indication that defendant's decision not to testify was influenced by the court's denial of his *Beagle* motion and the consequent prospect of his impeachment with the prior burglary conviction should he take the stand.

In *People* v. *Burdine* (1979) 99 Cal.App.3d 442 [160 Cal.Rptr. 375], the court addressed a situation where "there is no indication of why defendant decided not to testify." (P. 450.) Holding the erroneous denial of a *Beagle* motion to be harmless error, the court in *Burdine* reviewed *Beagle, People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], and *People* v. *Fries* (1979) 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19], and concluded that "unless the record contains some indication that an adverse ruling on a *Beagle* and *Rist* motion has adversely affected a defendant's decision to testify, the error is nonprejudicial. [¶] . . . Many defendants choose not to take the stand when there is no evidence of prior convictions." (*Burdine, supra,* at p. 450; see also *People* v. *Bailes* (1982) 129 Cal.App.3d 265, 279 [180 Cal.Rptr. 792].)

We are unable to follow *Burdine* in this case for two reasons. First, when *Burdine* was decided, the law clearly required the trial court to evaluate the effect of the denial of a *Beagle* motion on defendant's right to testify. (*People* v. *Rist, supra,* 16 Cal.3d at p. 222.) Consequently, where, as in *Burdine*, the trial court was evaluating the admissibility of a prior under *Beagle*, the defense could reasonably be required to inform the trial court if denial of the *Beagle* motion would affect defendant's decision whether to testify, so that the court could weigh that factor in ruling on the *Beagle* motion. (See *People* v. *Fries, supra,* 24 Cal.3d at p. 232, fn. 11.)

Here, the trial court unequivocally indicated that the *Beagle* balancing test was inapplicable and that the prior could be used for impeachment without qualification under Proposition 8.[2] There was consequently no reason for the defense to alert the court to the effect of the trial court's ruling on the defendant's decision to testify, because that information was irrelevant to the trial court's decision. This case is thus analogous to *People* v. *Rist, supra,* 16 Cal.3d 211, where defendant did not explicitly advise the court that he would stay off the stand if his *Beagle* motion were denied but where the court's "summary disposition" of defendant's *Beagle* motion precluded

---

[2]The trial court remarked as follows: "The law, as it presently stands, allows the prosecutor to inquire for the purpose of impeachment whether or not a defendant has been previously convicted of an offense, any offense. If it happens to be the same offense with which he is presently on trial, so be it. And that's the law. I don't think it's a good law. I think it probably has some serious problems from the constitutional standpoint, but this is the Superior Court, not the Supreme Court."

defendant from making an offer of proof as to the testimony he would give should he testify. (*Id.*, at p. 223, fn. 11.)[3] *Rist* reversed. (*Id.*, at p. 223.)

Our second reason for failing to follow *People* v. *Burdine,* supra, is that the prior felony offenses involved in *Burdine* and this case are qualitatively different and permit different reasonable inferences to be drawn with respect to their probable effect on defendant's decision not to testify. In *Burdine,* defendant was charged with burglary and attempted burglary. (*Burdine, supra,* 99 Cal.App.3d at p. 445.) The erroneously admitted priors were not identical offenses but were rather a 15-year-old conviction for robbery and a more recent conviction for auto theft. (*Id.*, at p. 449.) The *Burdine* court concluded, "There is nothing in the record from which it is even possible to infer that denial of his motion prevented him from testifying." (*Id.*, at p. 450.) Here, the unusual potency of the identical prior itself helps to supply the inference absent in *Burdine.* Where, as here, the prior is *identical* to the offense with which defendant is charged a jury " ' " . . . will *inevitably* feel pressure to conclude that if the accused committed the prior crime he likely committed the crime charged." ' " (*People* v. *Spearman, supra,* 25 Cal.3d at p. 116, quoting *People* v. *Fries, supra,* 24 Cal.3d at p. 230, italics in original.) Since the effect of admission of an identical prior is "inevitably" (*ibid.*) to increase the likelihood a jury will find a defendant guilty, the effect on a defendant's decision whether to testify is similarly "inevitably" to discourage his testimony. Consequently, on a record that is silent with respect to whether an erroneously admitted impeaching prior affected defendant's decision not to testify, we must infer that admission of an identical prior influenced defendant not to testify. Moreover, where, as here, defendant could have testified free of impeachment by *any* priors had his *Beagle* motion been granted, the only fair inference is that defendant would have testified but for the erroneous denial of his *Beagle* motion.

In sum, we conclude that, in the circumstances of this case, defendant was not required to state explicitly that admission of the prior would influence his decision whether to testify in order to preserve his contention the error was prejudicial.

■ Nor can we conclude the error in admission of the prior for impeachment was harmless in light of the evidence. Defendant's fingerprints were not found at the scene of the crime nor was defendant found to be in pos-

---

[3]In *People* v. *Fries, supra,* 24 Cal.3d at page 233, the court made it clear that defendant was not required to make an offer of proof as to his expected testimony in connection with a *Beagle* motion, because, "To require such an offer of proof from appellant would have violated his right against self-incrimination." (*Id.*, at p. 233.) There, however, defendant's counsel informed the court that denial of the *Beagle* motion would probably keep defendant from taking the stand. (*Id.*, at p. 232, fn. 11.)

session of any stolen property. Defendant was linked to the offense primarily by the victims' neighbor who went to the victims' house to use their phone shortly before the burglary. The neighbor knew the victims would soon be absent from their house. At the time of the burglary, the neighbor, who did not know the victims well, was in the process of moving his possessions into his parents' house. A week after the incident, the neighbor was interviewed by the sheriff's department at the victims' house, not at his house where his possessions were. The defense argument was that the neighbor had the knowledge and opportunity necessary to commit the crime. Under these circumstances, we cannot conclude the *Beagle* error is harmless because this court "has no basis for concluding that appellant's testimony would not have affected the result of the trial." (*People* v. *Spearman, supra,* 25 Cal.3d at p. 119.)

## II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## III

The judgment is reversed.[4]

Carr, Acting P. J., and Francis, J.,† concurred.

---

*See footnote 4.

[4]All portions of this opinion, except part II are certified for publication. (See Cal. Rules of Court, rule 976.1.) Part II of this opinion does not meet criteria for publication (see Cal. Rules of Court, rule 976) and shall not be published.

†Assigned by the Chairperson of the Judicial Council.