[No. F002084. Fifth Dist. Mar. 28, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY DUANE SPENCER, Defendant and Appellant.

**COUNSEL**

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**HANSON (P. D.), J.**—Appellant, who was allowed to act as cocounsel during his trial before a judge without a jury, seeks reversal of the judgment of conviction because the trial court failed to secure a knowing and intelligent waiver of his right to counsel. In the alternative, appellant claims that if in fact he was represented by counsel and not acting in propria persona, the judgment should be reversed because of the ineffectiveness of trial coun-

sel. Because appellant's first contention is meritorious, the case is reversed. ■■ ■■■ We need not reach the second question.[1]

Stanley Duane Spencer was found guilty in count one of a violation of Penal Code section 211, robbery; it was further found that in the commission of the offense, appellant personally used a handgun within the meaning of Penal Code section 12022.5. Appellant also was found guilty of count two, possession of a firearm by an ex-felon in violation of Penal Code section 12021.

At arraignment, appellant, appearing with retained counsel Joe Lopes, entered pleas of not guilty to the crimes charged and denied the prior convictions. Trial was set and the date continued once. Before the trial date appellant waived jury trial, and Attorney Lopes notified the court that appellant wished to act as cocounsel, with Mr. Lopes acting as advisory counsel.

On the trial date, appellant admitted the first prior conviction as alleged in the information, and the prosecution's motion to strike the second prior conviction was granted. Both sides put on evidence; appellant testified, and the matter was continued. Twelve days later, after hearing argument by the prosecution and appellant, the court found appellant guilty as charged.

Appellant was sentenced to the upper term of five years for violation of Penal Code section 211, and a consecutive term of two years for the violation of Penal Code section 12022.5. A five-year state prison enhancement was imposed for the previously admitted prior conviction. The term for violation of Penal Code section 12021 was stayed, resulting in a total sentence of 12 years with sentence credit for 288 days. Appellant filed his own notice of appeal.

■ A discussion of the facts is not necessary to the determination of the appeal. Appellant was identified at trial by the victim of the robbery and a percipient witness; upon appellant's arrest, incriminating evidence was discovered in the automobile in which appellant was found sleeping and upon his person. There is substantial evidence to sustain the judgment of conviction, and appellant may be retried. (*People* v. *Pierce* (1979) 24 Cal.3d 199, 209 [155 Cal.Rptr. 657, 595 P.2d 91]; *People* v. *Schindler* (1980) 114 Cal.App.3d 178, 190 [170 Cal.Rptr. 461].)

---

[1]It is clear that a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel. (*People* v. *McKenzie* (1983) 34 Cal.3d 616, 628-629 [194 Cal.Rptr. 462, 668 P.2d 769].)

■ Although appellant initially was represented by a deputy public defender at the arraignment stage, at that point appellant became displeased with appointed counsel, relieved the public defender and retained private counsel. At the pretrial hearing conference, appellant's retained counsel informed the court that appellant desired to act as cocounsel with his attorney:

"THE COURT: Mr. Spencer, did you want to present something to the court?

"MR. SPENCER: Yes, your Honor. That would be a co-counsel with my attorney if that would be acceptable and I would like to be apprised of whether or not you received the traverse that I filed to the petition for writ of habeas corpus pursuant to *88116.2*" Appellant's retained counsel spoke up and said: "I make that motion, too, your Honor. I represented the defendant before and in that previous trial he also acted as his attorney with me and I found that he did pretty good and we would want to make the same motion."

However, the judge in no uncertain terms stated that he considered appellant to be represented by counsel and that appellant's desire would not be honored, at least for the time being. Further, the court explained to appellant that it could not consider motions made by appellant in propria persona while appellant was represented by counsel.[2]

"THE COURT: Wait just one moment. The argument you are making now is an argument that is—that should be incorporated in a motion to dismiss under 995.

"MR. SPENCER: That is very true, your Honor.

"THE COURT: You are represented by a lawyer and the Court will not accept motions that are filed titled in propria persona, meaning you are representing yourself.

"MR. SPENCER: Your Honor, I was arraigned in pro per.

---

[2]Appellant filed two petitions with the court, one for habeas corpus and the other for a writ of mandate, neither of which appellant's retained counsel was aware.
"MR. SPENCER: I am in custody and illegal circumstances have prevailed upon me that are incorporated in the habeas corpus and I am not really disposed to waive any more time. [¶] MR. LOPES: I don't know anything about the habeas corpus. [¶] Has he filed one? I don't know anything about it. . . . Well, your Honor, this petition for writ of mandate filed then? [¶] MR. SPENCER: My understanding is a writ can be filed at any time. [¶] MR. LOPES: I had nothing to do with that. I don't know anything about it."

"THE COURT: You were?

"MR. SPENCER: Yes. And I was given a Public Defender.

"THE COURT: But you are not in pro per at this time.

"MR. SPENCER: No. I was given an attorney." The discussion continued between appellant and the court, with appellant's retained counsel remaining silent; appellant made several motions to the court including a discovery motion, a motion for appointment of a defense investigator, and a motion relating to an untimely preliminary hearing. The court responded: "Just one moment. I am not going to continue a dialogue with a defendant represented by a lawyer, and I am just merely responding to [some things]. I am not going to continue a dialogue. You are not counsel in this case as of yet. All right?

"MR. SPENCER: Yes, your Honor."

Obviously at the end of this hearing appellant had not been advised of the consequences or pitfalls of representing himself. (*People* v. *Joseph* (1983) 34 Cal.3d 936, 945, fn. 4 [196 Cal.Rptr. 339, 671 P.2d 843].) We are not informed by the record whether the previous trial referred to by Attorney Lopes, in which Lopes and appellant served as cocounsel, involved a misdemeanor or a felony offense, petty theft or drunk driving, or whether at that prior trial appellant was advised of the consequences of such joint representation. However, appellant was represented by counsel when he left the courtroom and was told so. There had been no *Faretta* hearing. (*Faretta* v. *California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581, 95 S.Ct. 2525].)

The next stage of the proceedings occurred on the day of trial. At this time, the following colloquy took place:

"THE COURT: Mr. Lopes, defendant ready?

"MR. LOPES: Yes, Your Honor. We ask the defendant be, uh, admitted as an attorney for himself along with me.

"THE COURT: All right. In other words, you're asking that he be permitted to act as co-counsel with you; in other words, *representing himself?*

"MR. LOPES: Yes.

"THE COURT: Along with you representing him.

"MR. LOPES: Yes, your Honor.

"THE COURT: You will remain attorney of record and involved in control and advising him at all times; is that correct?

"MR. LOPES: Yes. And he'll also have permission to question the witness. I'd appreciate that.

"THE COURT: All right. I'll have to ask you to limit the questioning. Either you do it or he does it as to a particular witness. Now, I will let you, you know, change as to [who's going to] do the questioning on certain witnesses. But if one person starts to ask the questions, then that person will have to continue. Now, you'll have a chance to confer with him and he'll have a chance to confer with you.

"MR. LOPES: That will be fine. You understand that?

"DEFENDANT SPENCER: Yes.

"THE COURT: All right, let the record so indicate."[3] (Italics added.)

During trial it quickly became apparent that it was appellant who was in control of his representation. Appellant conducted the cross-examination of each of the prosecution's witnesses, pausing only to confer with retained counsel between witnesses. In addition, appellant made the closing argument to the court.

The respondent argues that because appellant joined forces with his retained counsel in presenting his defense appellant received all of the benefits of representation by a lawyer and consequently there was no need for a knowing and intelligent waiver of the right to counsel. We disagree. Respondent's argument ignores the basic requirement that there be *some* understanding of the consequences of such a choice. ■ Moreover, it is clear that "defendant is not entitled to have his case *presented* in court *both by himself and by counsel* acting at the same time or alternating at defendant's pleasure. [Citations.]" (*People v. Mattson* (1959) 51 Cal.2d 777, 789 [336 P.2d 937].) "So long as defendant is represented by counsel at the trial, he has no right to be heard by himself [citations]; conversely, when defendant has intelligently declined the aid of counsel he has no right to interrupt the trial with a demand for legal assistance [citation]." (*Ibid.*; see also *People v. Harris* (1977) 65 Cal.App.3d 978, 987 [135 Cal.Rptr. 668].)

---

[3] The court minutes stated: "Mr. Lopes moves to allow the defendant to act as co-counsel in this matter and the motion is granted."

However, on good cause shown, a trial court may permit a defendant who is represented by counsel to participate in the conduct of his case or permit a defendant in propria persona to employ an attorney to sit by him and counsel him during the trial. "These matters are within the sound discretion of the trial judge, who is in a position to appraise the courtroom situation and determine what procedure will best promote orderly, prompt and just disposition of the cause." (*People* v. *Mattson, supra,* 51 Cal.2d 777, 797.)

It is suggested in the *Mattson* case that the court should not permit a defendant to be represented by an attorney and also participate actively during the trial, examining witnesses, making objections, presenting argument, unless the court on a "substantial showing determines that in the circumstances of the case the cause of justice will thereby be served" and the court's business will not be delayed. (*People* v. *Mattson, supra,* 51 Cal.2d 777, 797.)

In *United States* v. *Kimmel* (9th Cir. 1982) 672 F.2d 720, the Court of Appeals for the Ninth Circuit analyzed a similar situation and stated: "The Government argues that when the accused and his lawyer join forces to manage and present the defense, the accused receives all the benefits of representation by a lawyer and, consequently, there is no need for a waiver of counsel. We disagree. When the accused assumes functions that are at the core of the lawyer's traditional role, . . . he will often undermine his own defense. Because he has a constitutional right to have his lawyer perform core functions, he must knowingly and intelligently waive that right. This holding is a logical extension of the well-established rule that a waiver is required despite the presence of a court-appointed advisor. [Citation.]" (*Id.,* at p. 721.)[4] Cases have described the right to defend pro se and the right to counsel as " 'two faces of the same coin,' [citation] in that the waiver of one right constitutes a correlative assertion of the other." (*United States* v. *Conder, supra,* 423 F.2d 904, 908.) The principal concern in disallowing the dual assertion of both constitutional rights is the orderly function of judicial administration to prevent such additional complications as here where an appellant may claim ineffective assistance of counsel on appeal only for the portions of his defense which were under the control of counsel. The Sixth Circuit Court of Appeals, in *Conder,* responded to this state of affairs in the following manner: "While it may be within the discretion of a [court] to permit both a criminal defendant and his attorney to conduct different phases of the defense in a criminal trial, [citation], for purposes of determining whether there has been a deprivation of constitu-

---

[4]See also *United States* v. *Dujanovic* (9th Cir. 1973) 486 F.2d 182, 185-186; *United States* v. *Conder* (6th Cir. 1970) 423 F.2d 904, 908; *United States* v. *Gaines* (N.D.Ind. 1976) 416 F.Supp. 1047, 1050.

tional rights a criminal defendant cannot logically waive or assert both rights. The defendant must make a choice, and he should not be permitted to manipulate his choice so that he can claim reversible error on appeal no matter which alternative he apparently chose. . . . [Citation.]"[5] (*Ibid.*)

During the very short discussion at the beginning of trial, the court apparently recognized that if appellant acted as cocounsel he would waive the right to assistance of counsel when it made the statement: ". . . you're asking that he be permitted to act as co-counsel with you; in other words, *representing himself?*" (Italics added.) However, shortly thereafter, the court stated that appellant's retained counsel would remain attorney of record, "involved in control," advising appellant at all times. By agreeing to act as cocounsel, appellant in effect waived his Sixth Amendment right to be represented by counsel. However, he was never asked if he waived that right. ■ In order for that waiver to be valid, it must be done voluntarily, knowingly and intelligently " 'with sufficient awareness of the relevant circumstances and likely consequences.' " (*People* v. *Mroczko* (1983) 35 Cal.3d 86, 110 [197 Cal.Rptr. 52, 672 P.2d 835], quoting *Brady* v. *United States* (1970) 397 U.S. 742, 748 [25 L.Ed.2d 747, 756, 90 S.Ct. 1463].)

■ The test for the validity of a waiver of a constitutional right was explained by the United States Supreme Court in *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed.2d 1461, 58 S.Ct. 1019, 146 A.L.R. 357]. As stated in *Johnson*: "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (*Id.,* at p. 464 [82 L.Ed.2d at p. 1466].) This language was repeated in the context of the waiver of the Sixth Amendment right to counsel in *Adams* v. *U.S.* ex rel. *McCann* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 275, 63 S.Ct. 236, 143 A.L.R. 435], wherein the court said: "[T]he Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." Similar language was used by the United States Supreme Court in the *Faretta* decision. (*Faretta* v. *California, supra,* 422 U.S. 806, 835 [45 L.Ed. 562, 582].)

■ The test for determining whether a waiver of the Sixth Amendment right to counsel is intelligently made focuses on the accused's understanding of the implications of his waiving the right to counsel rather than on the

[5]This is what appellant in this case alleges in the alternative.

trial court's explanations. (*United States* v. *Kimmel, supra,* 672 F.2d 720, 722; *Cooley* v. *United States* (9th Cir. 1974) 501 F.2d 1249, 1252, cert. den. 419 U.S. 1123 [42 L.Ed.2d 824, 95 S.Ct. 809].) However, a waiver of a constitutional right cannot be considered "intelligent" unless the defendant is sufficiently informed *of the consequences of his choice.* (*United States* v. *Odom* (9th Cir. 1970) 423 F.2d 875, 876; *People* v. *Zatko* (1978) 80 Cal.App.3d 534, 543 [145 Cal.Rptr. 643].)

The California Supreme Court in *People* v. *McKenzie, supra,* 34 Cal.3d 616, stated that the trial court "*must* determine that [the defendant] is competent to waive his right to counsel and that any such election is knowing, intelligent and understanding. [Citations.] The accused should be 'made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open".' " (*Id.,* at p. 628 quoting *Faretta* v. *California, supra,* 422 U.S. 806, 835 [45 L.Ed.2d 562, 581], and *People* v. *Lopez* (1977) 71 Cal.App.3d 568, 571 [138 Cal.Rptr. 36], italics added; *People* v. *Joseph, supra,* 34 Cal.3d 936, 945, fn. 4.)[6]

■ We have held that more than a "perfunctory hearing" is required in making this determination, and that the record "must show that the defendant made a knowing and intelligent election." (*Curry* v. *Superior Court*

---

[6]In *People* v. *Joseph,* the Supreme Court interpreted *Faretta* as mandating an on-the-record advisement of the dangers and disadvantages of self-representation. The court stated: "*Faretta* holds that an accused seeking to represent himself *must* 'be made aware of the dangers and disadvantages of self-representation, . . .' " (*People* v. *Joseph, supra,* at p. 945, fn. 4; italics added.) The *Lopez* case (cited in *Joseph*) intimated that some sort of *Faretta* hearing wherein the defendant was made aware of the disadvantages and dangers of self-representation was required, and in some detail suggested three, nonexclusive, general categories that may be considered in a *Faretta* situation. They are: (1) The disadvantages of self-representation have been communicated to the defendant; (2) the defendant has sufficient intellectual capacity; and (3) the defendant is informed that he waives the right to appeal on the grounds of inadequacy of representation. (*People* v. *Lopez, supra,* 71 Cal.App.3d at pp. 572-574.)

The commentary to standard 6-3.6 of the American Bar Association, Standards for Criminal Justice suggests that "the trial judge must conduct a thorough inquiry into the circumstances surrounding the [decision to appear pro se] to assure that it is knowingly and intelligently made." (I ABA, Stds. for Crim. Justice (2d ed. 1980) ch. 6, std. 6-3.6(a), p. 6.40.) In addition, the following inquiries are recommended:

Standard 6-3.6. "The defendant's election to represent himself or herself at trial [¶] (a) A defendant should be permitted at the defendant's election to proceed in the trial of his or her case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant: [¶] (i) has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when the defendant is so entitled; [¶] (ii) possesses the intelligence and capacity to appreciate the consequences of this decision; and [¶] (iii) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case. [¶] (b) When a litigant undertakes to represent himself or herself, the court should take whatever measures may be reasonable and necessary to ensure a fair trial."

(1977) 75 Cal.App.3d 221, 225 [141 Cal.Rptr. 884].)[7] Four recent California Supreme Court cases, *People* v. *Mroczko, supra,* 35 Cal.3d 86, *People* v. *Joseph, supra,* 34 Cal.3d 936, *People* v. *McKenzie, supra,* 34 Cal.3d 616, and *People* v. *Windham* (1977) 19 Cal.3d 121 [137 Cal.Rptr. 8, 560 P.2d 1187], addressed the question of a waiver of the Sixth Amendment right to counsel and held that the record must affirmatively show a knowing and intelligent waiver with an awareness of the consequences of such a waiver. (*People* v. *Mroczko, supra,* at p. 110; *People* v. *Joseph, supra,* at p. 945, fn. 4; *People* v. *McKenzie, supra,* at p. 628; *People* v. *Windham, supra,* at p. 128.)

■ The language of the recent *Joseph* opinion of the California Supreme Court, repeated the words used in the 1942 *Adams* case and in the 1975 *Faretta* case, and indicated clearly that an on-the-record advisement of the implications of a defendant's selection of self-representation must be made. (*People* v. *Joseph, supra,* at p. 945, fn. 4.)

■ In *Windham,* the issue was the timeliness of a *Faretta* motion. The court held that a defendant must make an unequivocal assertion of his right to represent himself "within a reasonable time prior to the commencement of trial." (*People* v. *Windham, supra,* 19 Cal.3d 121, 128, cert. den. *Windham* v. *California* (1977) 434 U.S. 848 [54 L.Ed.2d 116, 98 S.Ct. 157].) The court further stated that once the case proceeds to trial while the accused is represented by counsel, it is within the sound discretion of the trial court either to grant or deny the defendant's self-representation request. (*Id.,* at pp. 127-128.) ■ ■■■ ■ However, if the court chooses to grant a midtrial request for self-representation, the trial court must "inquire *sua sponte* into the specific factors underlying the request thereby insuring a meaningful record in the event that appellate review is later required." (*Id.,* at p. 128.)[8]

---

[7]Accord *People* v. *Lopez, supra,* 71 Cal.App.3d 568; *People* v. *Cervantes* (1978) 87 Cal.App.3d 281 [150 Cal.Rptr. 819]; *People* v. *Fabricant* (1979) 91 Cal.App.3d 706 [154 Cal.Rptr. 340].)

[8]Some of the factors the court in *People* v. *Windham, supra,* 19 Cal.3d 121, 128, suggested trial courts consider in assessing "such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Ibid.*) Though the factors for consideration are different in a pretrial setting, the underlying nature of the waiver is the same in that the accused will no longer have the assistance of experienced counsel and the trial court should make inquiries into the defendant's request for self-representation to assure both the court and the particular defendant that the request is made intelligently.

We recognize that a pretrial request by an accused must be granted if the "defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action." (*Curry* v. *Superior Court, supra,* 75 Cal.App.3d 221, 226-227.) The right of self-representation is not conditioned on the profes-

In *McKenzie,* the accused, despite the magistrate's careful admonitions about the dangers of self-representation, elected to waive his right to be represented by an attorney and later indicated his desire to plead guilty and asked the court to commit him to a state mental hospital. Upon the judge's explanation that a guilty plea would not necessarily result in such a commitment, the defendant chose to reconsider entering the plea and to defer decision. At the preliminary hearing, when asked whether he could afford to hire counsel, defendant refused to answer, and as a result the court assigned the public defender to represent him. The public defender objected to his appointment on grounds that defendant had properly invoked his right of self-representation in municipal court, there had been no adequate grounds to terminate the self-representation, and defendant's actions indicated he rejected representation by appointed counsel. (*People* v. *McKenzie, supra,* 34 Cal.3d 616, 624.) The defendant refused to respond to the trial court's questioning whether he had indeed waived his right to counsel. The public defender asked for a continuance, claiming that certain defense strategies had to be developed, the preliminary hearing record was inadequate, and there was a lack of cooperation from defendant. The public defender refused to participate in the trial beyond appearing in court and sitting next to his client unless a continuance was granted. When the request for continuance was denied, true to his word, the public defender did not participate. The accused was found guilty on all counts.

The California Supreme Court held that McKenzie in effect had been denied effective assistance of counsel by the public defender's refusal to participate in McKenzie's defense, and once the public defender refused to participate, the court should have advised the defendant he had the choice either to represent himself or to have substitute counsel appointed. However, said the court, before a defendant is permitted to choose the option of self-representation, "the court must determine that he is competent to waive his right to counsel and that any such election is knowing, intelligent and understanding." (*Id.,* at p. 628.) The court, quoting *People* v. *Lopez, supra,* 71 Cal.App.3d 568, 571, stated that the accused should be "'made aware of the dangers and disadvantages of self-representation. . . .'" (*Ibid.*)

In *Mroczko,* the issue before the court was whether the public defender could, with the express approval of his clients, represent two codefendants

---

sional competence of the particular defendant; in fact it has been said "that the standard of competence for making the decision to represent oneself is vaguely higher than the standard for competence to stand trial." (*United States* ex rel. *Konigsberg* v. *Vincent* (2d Cir. 1975) 526 F.2d 131, 133 cert. den. *Konigsberg* v. *Vincent* (1976) 426 U.S. 937 [49 L.Ed.2d 388, 96 S.Ct. 2652]; *People* v. *Zatko, supra,* 80 Cal.App.3d 534, 543; *Curry* v. *Superior Court, supra,* 75 Cal.App.3d 221, 226-227.) However, each of those decisions also suggests that the accused must be made aware of the consequences of his or her choice. (*Ibid.*)

in a capital case without some actual or potential conflict denying effective assistance of counsel to either accused. The court stated: " 'When a trial court undertakes to appoint counsel for indigent codefendants [citation], it must assume the burden of assuring that its appointment does not result in a denial of effective counsel because of some possible conflict.' [Citation.] While the right to conflict-free counsel may generally be waived [citations] waivers of constitutional rights must, of course, be 'knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' [Citation.] No particular form of inquiry is required, but, at a minimum, the trial court must assure itself that (1) the defendant has discussed the potential drawbacks of joint representation with his attorney, or if he wishes, outside counsel, (2) that he has been made aware of the dangers and possible consequences of joint representation in his case, (3) that he knows of his right to conflict-free representation, and (4) *that he voluntarily wishes to waive that right.* [Citations.] *Any waiver must be unambiguous and 'without strings.'* [Citations.] *We indulge every reasonable presumption against the waiver of unimpaired assistance of counsel.* [Citation.]" (*People v. Mroczko, supra,* 35 Cal.3d 86, 109-110.) (Italics added, fns. omitted.)

▇▇▇ It seems clear that a waiver of the Sixth Amendment right to assistance of counsel requires the accused be informed of the consequences of his decision. (*People v. Mroczko, supra,* 35 Cal.3d 86, 110; *Curry v. Superior Court, supra,* 75 Cal.App.3d 221, 227; *People v. Lopez, supra,* 71 Cal.App.3d 568, 571-573.)[9]

---

[9]Several opinions, including a recent opinion of this court (*People v. Paradise* (1980) 108 Cal.App.3d 364 [166 Cal.Rptr. 484]), suggest that the trial court has no duty to inform an accused of the consequences of his decision to proceed pro se. Apparently relying on the language of *Johnson v. Zerbst, supra,* 304 U.S. 458, in *People v. Paradise,* this court stated that once the respondent establishes that an accused "was advised of his right to counsel, including his right to appointed counsel . . . [and] was informed of the nature of the charge against him and the possible punishments involved," the burden rests on the appellant "to demonstrate that he did not intelligently and understandingly waive his right to counsel with knowledge of the dangers and risks involved." (*People v. Paradise, supra,* at pp. 369-370.)

While it is true that the United States Supreme Court in *Johnson* placed the burden of proof on a defendant who, without counsel, acquiesced in a trial resulting in his conviction to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel, the court stated that the existence of a "proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." (*Johnson v. Zerbst, supra,* 304 U.S. at pp. 465, 468 [82 L.Ed. at pp. 1467, 1468].) The *Johnson* court also stated that " 'acquiescence in the loss of fundamental rights' " will not be presumed and " 'courts indulge every reasonable presumption against waiver' " of fundamental constitutional rights. (*Id.,* at p. 464 [82 L.Ed. at p. 1466].) Without some sort of advisement from the court of the potential consequences of a waiver of the right to counsel and the decision to proceed pro se, it would be very difficult to determine from the whole record "that a defendant's waiver of counsel and decision to represent himself was knowing and intelligent [and] that in choosing to represent himself he knew what he was doing and made the decision with eyes open." (*People v. Paradise, supra,* at p. 368, quoting the familiar language from *Adams v. U.S.* ex rel.

In the context of mixed representation, it is even more apparent that the accused must be told of the consequences of his decision to act as cocounsel as aptly illustrated by the following comments: "To whatever extent courts refuse to permit pro se defendants to use their advisory counsel as spokesmen, or find waiver of the right to proceed pro se when defendants turn to advisory counsel for such assistance, the same dilemmas arise as in cases where counsel was initially retained or assigned. If the court denies access to partial counsel an effective waiver of counsel is forced upon the defendant. If partial reliance upon counsel leads to a judicial denial of pro se activity, an effective waiver has also occurred. The failure of the judiciary to make careful inquiry into the waiver problems is a serious oversight." (Chused, *Faretta and The Personal Defense: The Role of a Represented Defendant in Trial Tactics* (1977) 65 Cal.L.Rev. 636, 661.) The appellant in this case was never asked whether he waived his right to the assistance of counsel, or understood the consequences of that choice. Appellant was led to believe he could act as his own attorney without suffering the consequences of such a decision, specifically, the inability to claim ineffective assistance of counsel on appeal for the portions of his defense under appellant's control, which in this case was in effect the total trial. (*People v. McKenzie, supra,* 34 Cal.3d 616, 628-629; *People v. Harris, supra,* 65 Cal.App.3d 978, 987-988.)

The court declared that retained counsel for appellant would "remain attorney of record" which might very well have signaled to appellant that he still retained the right to challenge the effectiveness of his representation on appeal. This record is devoid of any ascertainable attempt by the trial court to determine whether appellant's waiver of his right to counsel was knowing and intelligent. Just as this court determined that a "perfunctory hearing is improper" (*Curry v. Superior Court, supra,* 75 Cal.App.3d 221, 225), so must we hold here that the *absence of any hearing* is improper. "There is some disagreement in the courts of this state on the question whether the absence of the requisite warnings is prejudicial per se or if the error can be judged under the harmless error test of *Chapman v. California* (1967) 386 U.S. 18, 24 . . . . The two cases which have directly addressed the issue—*People v. Lopez, supra,* 71 Cal.App.3d at page 571 and *People*

*McCann, supra,* 317 U.S. 269, 279-281 [87 L.Ed. 268, 274-276].) The *Paradise* case is distinguishable from the present case because it involved a defendant's challenge of his waiver of his right to counsel in the context of his guilty plea to a misdemeanor charge. Defendant *Paradise* read and signed a form entitled " 'Defendant's Acknowledgement of Advisal, Understanding and Waiver of Constitutional Rights' " waiving all his *Boykin-Tahl* rights including the right to counsel in making his plea. In effect, the duty of the court to inform the defendant of the consequences of his waiver was fulfilled by the form itself and the burden then shifted to the defendant to prove the absence of a knowing and intelligent waiver. (See also *Benge v. Superior Court* (1980) 110 Cal.App.3d 121, 129-130 [167 Cal.Rptr. 714].)

v. *Cervantes, supra,* 87 Cal.App.3d at pages 293-294—have come down on both sides of the question." (*People* v. *Fabricant, supra,* 91 Cal.App.3d 706, 713.) Justice Kaus further pointed out in *Fabricant* that the *Lopez* court held the error to be prejudicial per se and the *Cervantes* court held the proper test to be whether the error was harmless beyond a reasonable doubt. We note that *Lopez* was recently cited by the California Supreme Court. (See *People* v. *Joseph, supra,* 34 Cal.3d 936, 945, fn. 4; *People* v. *McKenzie, supra,* 34 Cal.3d 616, 629.)

However, even if we assume the *Chapman* standard is the test, this record does not establish beyond a reasonable doubt that proper warnings would not have discouraged defendant in his decision to be his own lawyer while his "cocounsel" sat by. Appellant was given no warnings of any kind. Appellant appears to have some cleverness and it is unlikely from reading the record he would have relinquished the right to claim inadequacy of counsel on appeal based on his own self-representation, had he been given "some timely advice from the trial court." (*People* v. *Fabricant, supra,* 91 Cal.App.3d 706, 713.)

On this record we are not convinced beyond a reasonable doubt that the error did not contribute to the conviction.

The judgment is reversed.

Zenovich, Acting P. J., and Martin, J., concurred.