Filed 9/26/16  P. v. Diaz CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ESTEBAN ACEVEDO DIAZ,<br><br>Defendant and Appellant. | F070218<br><br>(Super. Ct. No. F13900198)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  James A. Kelley, Judge.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Fifteen years ago, in the case of *People v. Collins* (2001) 26 Cal.4th 297 (*Collins*), the California Supreme Court was asked to determine the validity of a criminal waiver of a jury trial, when the trial court, in advising the defendant before accepting the waiver,

informed him he would receive "some benefit" if he waived his right to a jury trial. The court held defendant's jury trial waiver was not a valid waiver in light of the trial court's assurance he would receive a benefit by doing so, and it concluded reversal of the defendant's conviction was thereby compelled. (*Id.* at p. 300.)

In this case, defendant Esteban Acevedo Diaz waived his right to a jury trial after the trial court advised him, "I understand that the People would be dismissing three of the charges if you went forward with a court trial and your exposure would be—instead of 55 years to life in prison, your exposure would be 25 years to life in prison and the settlement talks could continue during the course of the court trial." We agree with defendant's contention his waiver was invalid under the *Collins* case, which also compels a reversal of defendant's convictions.

## PROCEDURAL HISTORY AND FACTS[1]

Following a court trial, defendant was convicted of four counts of committing lewd acts on two of his children who were under 14 years old at the time of the offenses (Pen. Code,[2] § 288, subd. (a)). The court found true an additional allegation that defendant committed lewd acts on more than one victim within the meaning of section 667.61, subdivision (e)(4). The court sentenced defendant to consecutive terms of 15 years to life on counts 1 and 4 and to concurrent sentences of 15 years to life on counts 2 and 3.

### *Hearing on Defendant's Waiver of a Jury Trial*

The morning of August 27, 2014, the parties had a pretrial hearing. Defendant was assisted with a Spanish-language interpreter. The trial court noted it had asked

---

[1]In light of the dispositive issue pertaining to the jury trial waiver, we dispense with the traditional statement of facts and instead provide a rendition of the hearings on the pretrial jury waiver.

[2]Unless otherwise designated, all statutory references in this opinion are to the Penal Code.

counsel off the record if defendant wanted a jury trial or was willing to waive it. The court had the following colloquy with defendant:

> "[THE COURT: T]he choice is yours. And the choice is, you can have a jury, which means we will select a jury from people in the community, and 12 of those people would come and sit in the box and listen to the evidence in this case and determine whether or not the People can prove that you're guilty of the charges. You can waive your right to have a jury trial and have only a judge decide whether or not the People can produce enough evidence to determine whether you are guilty of the charges or not. The standard is beyond a reasonable doubt that the People have to prove whether it's a jury or just a judge hearing the case.

> "Again, the choice is yours. If you didn't have a jury in here, the case would go quicker, but, of course, you're entitled to have the jury here. And there are advantages to both.

> "I understand that the People would be dismissing three of the charges if you went forward with a court trial and your exposure would be—instead of 55 years to life in prison, your exposure would be 25 years to life in prison and the settlement talks could continue during the course of the court trial. If a jury was impaneled, I don't think that would be a possibility, but, on the other hand, a jury would have to find you guilty by all 12 members.

> "So, again, there are advantages and disadvantages to either. The choice is yours, sir. What is your choice? I know your attorney has been explaining the options to you for about the last 45 minutes to an hour.

> "THE DEFENDANT: With you better, sir, Judge.

> "THE COURT: So you're waiving your right to a jury trial, sir?

> "THE DEFENDANT: Yes."

The prosecutor waived the People's right to a jury trial. The court stated it would call off the jurors and proceed with a court trial. When the court asked the prosecutor if a settlement offer had been made, she replied:

> "We had some settlement discussions. However, because of the rushed time, I didn't have a full opportunity to speak to the victims and my boss. So at this point, we had offered originally 18 years to the defendant. That was before trial. The counter was 17. At this point, 17 is not acceptable. I will talk to my victims again and my chief, but, if not, we would just be

3.

requesting that the trial start tomorrow. If the Court wants to start this afternoon, I would just have to check."

After discussing how long it would take the prosecutor to examine her witnesses and setting up the trial schedule, the prosecutor stated she would prepare a second amended information and the matter was recessed until after lunch. After the lunch recess, the proceedings resumed. The prosecutor stated she had filed a second amended information and added the following:

> "[PROSECUTOR]: Yes, your Honor. The People did file a second-amended information, conforming to proof in the case. With the second-amended information, the People are ready to proceed to trial. It does not substantively change the charges in the case at all. We are ready to proceed with the jury trial. It is the defendant's constitutional right if he would like to go to a jury trial on the current information, the second-amended information. We're ready to go to trial if he opts for a court trial.

> "So we just want to make clear that the defendant is entitled to go with a jury trial or court trial. If he wants to do the jury trial, we are ready to proceed.

> "THE COURT: So when you say no substantive changes, you have removed three charges.

> "[PROSECUTOR]: Correct, but the charges that were removed reflect the same event of what is charged in the alternative, which is a 288(a).

> "THE COURT: But it significantly reduces his exposure, his maximum exposure, if convicted of all charges.

> "[PROSECUTOR]: It is now at 25 to life. Correct.

> "THE COURT: Okay. So any objection to the second-amended information being filed?

> "[DEFENSE COUNSEL]: No, Your Honor.

> "THE COURT: All right. It will be filed and received, and I believe he needs to be arraigned [on it].

> "[DEFENSE COUNSEL]: Yes. I [ac]knowledge receipt of the second amended information. Waive formal arraignment, further advisement of statutory and constitutional rights. Plead not guilty.

"I did have a moment to speak with [defendant]. Unless he has some objection right now, it was our intention to proceed with a court trial.

"THE COURT: All right. I think the prosecutor wanted to be certain that he didn't believe that the second information would not be filed if it was a jury trial or court trial, but in any event, it's being filed. And his decision is still to have a court trial, waiving his right to a jury. [¶] Is that correct …?"

"THE DEFENDANT: Yes."

## DISCUSSION

### *Waiver of Right to Jury Trial*

Defendant contends his waiver of the right to a jury trial was neither voluntary nor knowing and intelligent because it was conditioned on a promise of leniency by both the prosecution and the trial court. Defendant acknowledges he was told after the filing of the second amended information that he could still have a jury trial, but argues one would connect back to the original inducement and nevertheless conclude "his sentencing exposure would be reduced if, and only if, he agreed to forgo a jury trial." Defendant argues "the trial court's subsequent reference to a reduction in exposure reinforced the original inducement to waive [a] jury trial."

The People reply defendant's waiver was voluntary because after the second amended information was filed, both the prosecutor and the trial court told defendant he could still have a jury trial but defendant still elected to have a court trial. The People alternatively argue it was the prosecutor, not the trial court, who induced defendant to waive his right to a jury trial. The People compare the prosecutor's inducement to a plea bargain, which when properly implemented can lead to a valid waiver of the right to a jury trial. The People argue that as in a plea bargain, a defendant can enter an agreement with the prosecutor to waive the right to a jury trial under the circumstances occurring here.

After careful review of the record, and in light of the applicable case law, we find defendant's jury trial waiver is invalid.

5.

**1. Improper Inducement for Waiver of the Right to Jury Trial by the Court or the Prosecutor May Constitute Coercion**

The Sixth Amendment, applicable to the states by the Fourteenth Amendment of the federal Constitution, is recognized as a fundamental constitutional right. (*Collins*, *supra*, 26 Cal.4th at p. 304.) The California Constitution confers upon a defendant in a criminal prosecution the right to a jury trial under article I, section 16. Our Supreme Court has also recognized this right as fundamental. (*Collins*, *supra*, at p. 304.) The practice of accepting a defendant's waiver of the right to a jury trial is common in both federal and state courts and is constitutional. As with the waiver of other fundamental constitutional rights, the waiver of the jury trial right must be knowing and intelligent—made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. It must be voluntary in the sense that it was the product of free and deliberate choice and not based on intimidation, coercion, or deception. (*Id*. at p. 305; *People v. Cunningham* (2015) 61 Cal.4th 609, 636-637.)

The state may not punish a defendant for the exercise of a constitutional right, or promise leniency to a defendant for refraining from exercising the right. "Coercion in either form has been rejected, whether its source is executive, legislative, or judicial in nature." (*Collins*, *supra*, 26 Cal.4th at p. 306.) The decisions prohibiting such coercion condemn the state's unilateral imposition of a penalty upon a defendant who chooses to exercise a legal right. It is a violation of due process of the most basic sort to punish a person because he or she has done what the law plainly allows. (*Id.* at p. 306, citing *Bordenkircher v. Hayes* (1978) 434 U.S. 357, 362-363.)

After the trial court in *Collins* learned the defendant might waive a jury trial, the court informed defense counsel "'there might well be a benefit in it,' because 'just by having waived jury' and thus not taking two weeks' time to try the case, 'that has some effect on the court.'" The court then informed the defendant he would receive a benefit of an unspecified nature if he waived his right to a jury trial. The court secured the

defendant's response that he understood the court's comments. (*Collins*, *supra*, 26 Cal.4th at p. 309.)

The Supreme Court observed "[t]he trial court, by following that procedure while announcing its intention to bestow some form of benefit in exchange for defendant's waiver of that fundamental constitutional right, acted in a manner that was at odds with its judicial obligation to remain neutral and detached in evaluating the voluntariness of the waiver." (*Collins*, *supra*, 26 Cal.4th at p. 309.) *Collins* determined "[t]he form of the trial court's negotiation with defendant presented a 'substantial danger of unintentional coercion.'" (*Ibid*.) *Collins* further noted the waiver of the fundamental right of a jury trial is not by itself subject to negotiation by the court. "In effect, the trial court offered to reward defendant for refraining from the exercise of a constitutional right." (*Ibid*.) *Collins* held error this fundamental was structural error not subject to harmless error analysis and compelled reversal of the judgment. (*Collins*, at pp. 310-313.)

We turn to defendant's contention the trial court coerced him into waiving his right to a jury trial. When the trial court advised defendant of his right to a jury trial, the court told defendant the People would be dismissing charges and exposing defendant to a prison term of 25 years to life rather than 55 years to life. The court further vaguely stated there would be advantages and disadvantages to either having a trial by jury or a court trial. Defendant then waived his right to a jury trial. This conduct was coercive under the *Collins* court's holding because it promised defendant leniency for waiving a fundamental constitutional right and included a vague promise there could be advantages to waiving a jury trial. Furthermore, it does not matter whether a promise of leniency for waiving a fundamental right comes from the court or the prosecutor. Rather, "[c]oercion … has been rejected, whether its source is executive, legislative, or judicial in nature." (*Collins*, *supra*, 26 Cal.4th at p. 306.)

**2.    Incorrect Information About the Maximum Potential Prison Penalty, When Given by the Prosecutor or the Court, May Substantially Affect a Defendant's Ability to Make a Knowing and Intelligent Waiver of the Right to Jury Trial**

When the parties came back to court after the lunch recess, the prosecutor filed a second amended information and told the court, defendant, and defense counsel the newly filed information was not contingent on defendant exercising his right to a jury trial. The prosecutor stated: "[T]he People are ready to proceed to trial. It does not substantively change the charges in the case at all. We are ready to proceed with the jury trial. It is the defendant's constitutional right if he would like to go to a jury trial on the current information, the second-amended information." The court asked whether the new information would significantly reduce defendant's maximum exposure if he were convicted of all the charges. The prosecutor replied, "It is now at 25 to life. Correct." Defense counsel stated he had a moment to speak with defendant and noted it "was our intention to proceed with a court trial."

The trial court reiterated to defendant "the prosecutor wanted to be certain that he didn't believe that the second information would not be filed if it was a jury trial or a court trial, but in any event, it's being filed." The court again asked defendant if he was waiving his right to a jury trial and defendant affirmed his choice to have a court trial.

Defendant had been charged in the first amended information with three counts of violating section 288a, subdivision (c)(2)(B), carrying three upper terms of 12 years; one count of section 286, subdivision (c)(2)(C), carrying an upper term of 11 years; and one count of section 288, subdivision (a), carrying an upper term of eight years. Defendant's maximum possible prison term under the first amended information was a determinate sentence of 55 years.

Defendant was charged in the second amended information with four counts of 288, subdivision (a), but with an additional allegation of multiple victims as defined in section 667.61, subdivision (e)(4). The second amended information potentially subjected defendant to four consecutive sentences of 15 years to life pursuant to section

667.61, subdivision (b) for a total possible exposure of 60 years to life. The second amended information actually subjected defendant to a potentially higher sentence than the first amended information.

Although defendant had been informed of his right to a jury trial and the filing of the second amended information was not contingent on him waiving this right, the court and the parties appeared to misunderstand the second amended complaint exposed defendant not to a maximum sentence of 25 years to life, but to a potential sentence of 60 years to life. The legal information and consequences of the second amended information imparted to defendant after the lunch recess by the prosecutor and the trial court were incorrect. Because the information expressly conveyed to defendant was inaccurate and misleading, defendant's ability to make an intelligent waiver of his right to a jury trial is completely in doubt. Even though the trial court and the prosecutor informed defendant he could still have a jury trial, they did so in the context of misinforming defendant of the new charges filed against him.

A criminal defendant may waive fundamental rights, including the right to a jury trial. (*Collins*, *supra*, 26 Cal.4th at p. 305, fn. 2; *People v. Smith* (2003) 110 Cal.App.4th 492, 500.) A defendant's waiver of the right to a jury trial may be accepted only if it is knowing and intelligent—made with full awareness of the nature of the right being waived and the consequences of the waiver. The waiver must be voluntary and must be taken personally from the defendant. (*Ibid.*)

In determining whether there was an effective waiver of a jury trial in favor of a court trial, case law does not require a specific formula or extensive questioning beyond assuring the waiver is personal, voluntary, and intelligent. Whether a valid waiver is taken is a question of fact. The burden is on the party claiming the existence of the waiver to prove it by evidence that does not leave the issue to speculation. (*People v. Smith*, *supra*, 110 Cal.App.4th at p. 500.)

9.

"A waiver is ordinarily an intentional relinquishment or abandonment of a *known* right or privilege." (*Johnson v. Zerbst* (1938) 304 U.S. 458, 464, italics added; see *People v. Spencer* (1984) 153 Cal.App.3d 931, 940, criticized on another ground in *People v. Bloom* (1989) 48 Cal.3d 1194, 1225-1226.) For instance, the test for determining whether there is a knowing and intelligent waiver of the Sixth Amendment right to counsel focuses on the accused's understanding of the implication of waiving his or her right; "a waiver of a constitutional right cannot be considered 'intelligent' unless the defendant is sufficiently informed *of the consequences of his [or her] choice*." (*Spencer*, *supra*, at pp. 940-941.)

In the context of a plea bargain, misinforming the defendant of the consequences of a plea entitles the defendant to withdraw his or her plea. (*People v. Victorian* (1992) 2 Cal.App.4th 954, 957 [defendant must be advised of direct consequences of a plea, including length of parole period]; *People v. Hill* (1976) 64 Cal.App.3d 16, 25-26 [defendant entitled to withdraw plea when court imposes more punishment than contemplated in plea agreement].)

In *People v. Hopkins* (1974) 39 Cal.App.3d 107, 110, the trial court permitted the prosecutor to file an amended information adding a gun use enhancement increasing the defendant's prison term by 10 years. The amendment was permitted after the defendant had already waived his right to a jury trial and entered a guilty plea. (*Id.* at pp. 110, 116-118.) The *Hopkins* court found the increased punishment added to the People's pleading and ultimately to the defendant's sentence—after the defendant had waived his right to jury—prejudiced defendant because he was not arraigned on the new information and did not personally waive his right to a jury trial based on that pleading. (*Id.* at pp. 118-119.)

The issue in *Hopkins* was whether the defendant's waiver of his jury trial right was invalidated by the subsequent filing of an information adding 10 years to the defendant's sentence. Although not directly on point here, the situation each defendant faced is analogous. In both cases the defendants could not have made knowing and intelligent

10.

waivers of their right to a jury trial; in *Hopkins* this occurred because the waiver of the right occurred prior to the filing of the new pleading; in this case, the waiver of the right occurred after defendant was incorrectly advised his prison exposure was substantially less in the new pleading than it actually was.

Under these facts, we reject the People's argument defendant made a knowing, intelligent, and voluntary waiver of his right to a jury trial. The People acknowledge defendant's actual prison exposure was 60 years to life, arguing that in misinforming defendant, the court was not memorializing a formal, binding agreement, but only conveying information provided by the parties. This argument is unpersuasive and completely ignores the legal requirement a defendant's waiver of a fundamental constitutional right be knowing and intelligent. It was not possible for defendant to make a knowing and intelligent waiver of his right to a jury trial after being misinformed concerning the legal consequences of the newly filed information, especially when defendant was told he faced a substantially shorter sentence than possible under the pleadings.[3]

In his reply brief, defendant argues the faulty waiver of the jury trial right prior to the lunch recess continued to taint the proceedings. He also contends his subsequent waiver of his right to a jury trial and the conduct of the trial court after the recess reinforced the earlier coercive inducement by the trial court for defendant to waive his jury trial right. There is merit to both of these points. The trial court improperly induced defendant pursuant to *Collins* to waive his right to a jury trial during the initial hearing by stating he could reduce his prison exposure by 30 years. How did the trial court's misstatement of defendant's new prison exposure of only 25 years to life undo the taint of the court's initial inducement? The prosecutor's statements defendant faced a prison term of 25 years to life and the trial court's failure to accurately explain the full penal

---

[3]After the lunch recess, defense counsel informed the court he had a brief consultation with his client. There is no record of what defense counsel told defendant and we will not speculate as to what advice defense counsel may have given defendant.

11.

consequences of the second amended information accomplished nothing except to reinforce the trial court's earlier coercive inducement for defendant to waive a jury.

We agree with the People defendant was told by both the prosecutor and the trial court after the lunch recess he had the right to a jury trial. Defendant was represented by counsel and personally waived his right to a jury trial a second time. The constitutional flaw in the post-lunch proceedings occurred, however, because defendant was misadvised concerning his maximum exposure under the newly filed information. The prosecutor and the trial court did not accurately explain to defendant his actual prison exposure under the second amended information, and actually misinformed defendant his total exposure would be 25 years to life when it was actually 60 years to life. In turn, it was improbable and unlikely defendant could enter a knowing and intelligent waiver of his right to a jury trial. This constituted improper inducement to defendant to continue to waive his constitutional right to a jury trial and resulted in structural error necessitating reversal of the judgment. (*Collins*, *supra*, 26 Cal.4th at pp. 310-313.)

**3. If the People and Defendant Entered a Plea Bargain to Waive a Jury Trial, the People Did Not Honor the Agreement**

The People alternatively argue the parties, as with a plea bargain, reached an agreement for defendant to waive his right to a jury trial. This argument is unpersuasive given the procedural posture the parties found themselves in before trial. As we view the proceedings, there was one hearing separated by a lunch recess. Before the recess, the trial court took a waiver of defendant's right to a jury trial. After defendant entered his waiver, the trial court asked the parties about plea negotiations. Defendant's offer appeared to be one year shorter than what the People were willing to accept. It is clear, however, that defendant's waiver of a jury trial was separate from, and not premised on, the plea negotiations.

The court in *Collins* noted its holding was not intended to call into question the well-established practice in which the prosecutor and defendant negotiate a plea of guilty or nolo contendere. (*Collins*, *supra*, 26 Cal.4th at pp. 309-310, fn. 4.) In *People v.*

12.

*Sanders* (1987) 191 Cal.App.3d 79, 86, this court found an agreement between the prosecutor and the defendant for the defendant to waive his jury trial right in exchange for dismissing one of three counts in an information was akin to a plea bargain and could be subsequently enforced. Our court in *Sanders* found the People breached their agreement with the defendant because after initially dropping the third count in the information, the People reinstated the count after the defendant waived his right to a jury trial. We reversed the judgment. (*Id*. at pp. 86-88.)

Here, unlike *Sanders*, the parties did not memorialize a formal agreement in which defendant was waiving his right to a jury trial in order for the People to file a second amended complaint with less prison exposure to defendant. An agreement can be inferred from the record, though whether there was an actual agreement between defendant and the prosecutor is unclear. As explained above, however, the second amended information filed by the People increased defendant's maximum possible prison term from a determinate sentence of 55 years to an indeterminate sentence of 60 years to life. Even if there was an agreement by the parties to reduce defendant's maximum prison exposure to 25 years to life in exchange for his waiver of his right to a jury trial, the People failed to follow the terms of such an agreement because defendant's maximum prison exposure actually increased. To the extent a formal agreement between the parties for defendant to waive his right to a jury trial can be inferred, our decision in *Sanders* mandates reversal of the judgment for the People's failure to follow the terms of such an agreement.[4]

The waiver of defendant's jury trial right was also clearly not part of a plea agreement because plea negotiations had broken down prior to the pretrial hearing and nothing in the proceedings indicates they were revived. The record does not support the People's alternative argument the parties negotiated a waiver of defendant's right to a

_____

[4]Defendant was sentenced on all four counts to prison terms of 15 years to life, though his sentence on two counts was ordered to be served concurrently.

13.

jury trial, or if they did so the People failed to fulfill the agreement.  Therefore, the judgment must be reversed.[5]

## DISPOSITION

The judgment is reversed and the case remanded for retrial or other disposition.

_____
PEÑA, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
DETJEN, J.

---

[5]Defendant also contends the trial court erred in allowing expert testimony concerning child sexual abuse accommodation syndrome, and the parties concede there is clerical error in the abstract of judgment.  Because we find defendant was improperly induced into waiving his right to a jury trial, we reverse the judgment and do not reach the other issues raised in this appeal.

14.